IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA A. MRAZ :
:
PLAINTIFF, :
v. :
:
AETNA LIFE INSURANCE COMPANY : (3:12-CV-805)
:
DEFENDANT. : (JUDGE RICHARD P. CONABOY)
:

### Memorandum

We consider here competing Motions for Summary Judgment (Docs. 46 and 47) filed by Plaintiff Sandra A. Mraz ("Plaintiff" or "Mraz") and Defendant Aetna Life Insurance Company ("Aetna"). These motions have been fully briefed (Docs. 49, 52, 59, 60, 62 and 63) by the parties and are now ripe for our consideration.

**I. Procedural Background.**

This case originated in the Lackawanna County Court of Common Pleas and was removed to this Court on April 20, 2012 by Aetna due to the fact that the case is a dispute concerning insurance benefits under a federal statute, 29 U.S.C. §1001 et. seq. ("ERISA")(Doc. 1). After initial sparring over the propriety of some of Plaintiff's claims, Plaintiff filed an Amended Complaint (Doc. 9) seeking recovery of wrongfully denied benefits pursuant to ERISA §1132(a)(1)(B), breach of fiduciary duties pursuant to ERISA § 1132(a)(2), failure to comply with plan terms pursuant to ERISA § 1132(a)(3), and reasonable attorneys fees. (Doc. 51, ¶ 7; Doc.

1

64, ¶ 7).[1]

Aetna failed to produce an Administrative Record and to file its Answer to Plaintiff's Amended Complaint within the discovery deadline established by the Court.[2] (Doc. 6). Nevertheless, the Court entered an Order (Doc. 35) on April 15, 2013 that sanctioned Aetna's late submitted Administrative Record as the definitive Administrative Record in this case. The Court's Order of April 15, 2013 also granted the Plaintiff's attorneys additional time to conduct further discover if, after reviewing the Administrative Record, they determined that it was insufficient to place all relevant information before the Court. Plaintiff did propound discovery requests upon Aetna to which Aetna responded after the parties entered a Confidentiality Agreement. This material resulted in a supplement to the Administrative Record that was filed under seal and has also been considered by this Court.

II. **Factual Background.**[3]

Plaintiff's decedent, David Mraz, was killed in an accident on

---

[1] Only two counts, that seeking recovery of wrongfully denied benefits and that seeking attorneys fees remain. See this Court's Order of October 17, 2012 (Doc.15).

[2] Aetna's failure to produce a timely Administrative Record was a major factor in this case becoming procedurally gnarled. This confusion resulted in Aetna filing its Motion for Judgment on the Administrative Record (Doc. 47) one day late. The Court will accept that document and grant Aetna's Motion for Leave to File Motion for Summary Judgment Nunc Pro Tunc (Doc. 50).

[3] All aspects of this Factual Background are undisputed as indicated by Plaintiff's Amended Complaint (Doc. 9) and Aetna's Answer (Doc. 19) thereto or by comparing the parties respective Statements of Undisputed Fact (Docs. 48 and 51).

2

September 13, 2009. (Doc. 9 at ¶ 15). Mr. Mraz had been employed since May 21, 2007 by General Dynamics Corporation. (Id., ¶ 9). Mr. Mraz was covered by an ERISA Plan (the "Plan") that offered both basic and supplemental life insurance coverage. (Id., ¶ 8). The Plan was underwritten by Defendant Aetna. (Doc. 48, ¶ 22; Doc. 64, ¶¶ 20-25).

After Mr. Mraz's death, Plaintiff requested payment of insurance benefits pursuant to the Plan and was paid $64,900.00 in recognition of Mr. Mraz's basic life insurance benefit under the Plan. (Doc. 51, ¶ 56; Doc. 61, ¶ 56). Despite the fact that a "Proof of Death" form (Doc. 9-2) prepared by Aetna indicated that $129,800.00 in supplemental life insurance was "in force" at the time of Mr. Mraz's death, Aetna declined to pay that additional sum and requested Mr. Mraz's medical records. (Docs. 51, ¶¶ 49 and 56; Doc. 61, ¶¶ 49 and 56). Plaintiff complied with Aetna's requests for decedent's medical records whereupon Aetna received decedent's treatment records from Dr. Linda Thomas Hemack and Dr. Matthew Berger. (Docs. 51, ¶ 57; Doc. 61, ¶ 57). After reviewing Mr. Mraz's medical records, Aetna concluded that Mr. Mraz had made material misstatements on his Evidence of Insurability Statement ("EOI") which had been submitted with his application for supplemental life insurance benefits. (Doc. 9, ¶¶ 19-22; Doc. 19. ¶¶ 19-22). Aetna ultimately denied payment of the supplemental insurance benefits for which Plaintiff had applied by letter (Doc.

9-4) dated May 11, 2010.  (Doc. 9, ¶ 20; Doc. 19, ¶ 20).

Aetna's denial letter of May 11, 2010 provided its explanation of why it had paid basic life insurance benefits in the amount of $64,500.00 but would not pay an additional supplemental benefit of $129.800.00.  Aetna's letter explained that, because Mr. Mraz had not applied for supplemental benefits within 31 days of his "eligibility date" as required by the Plan, coverage could not take effect until he submitted "evidence of good health acceptable to Aetna."  A review of the Summary of Coverage Section of the policy (Doc. 9-1 at 1) discloses that one's "eligibility date" under the Plan is defined as "the later of the effective date of the policy (in this case March 1, 2003) or the date one actively commences work for the employer."  The parties do not dispute that Mr. Mraz began work at General Dynamics on May 21, 2007.  (Doc. 9 at ¶ 9; Doc. 19 at ¶ 9).  Thus, Mr. Mraz's "eligibility date" under the Plan was May 21, 2007.

Aetna's letter of May 11, 2010 (Doc. 9-4) also advised Plaintiff that its review of Mr. Mraz's medical records indicated that he had made a material misstatement at the time he submitted his EOI and, as a result, he did not have supplemental insurance coverage at the time of his death.  Aetna called Plaintiff's attention to the "Misstatement" section of the Plan (Doc. 9-1 at 27) which states:

> If any fact as to a person to whom the insurance

>relates is found to have been misstated, a fair change in premium will be made. <u>If the misstatement affects the existence or amount of insurance, the true facts will be used to decide if insurance is in force and its amount.</u>

Aetna identified Mr. Mraz's misstatement as his failure to acknowledge on his EOI that he had been treated for bipolar disorder, a condition that Aetna stated should have resulted in a denial of supplemental coverage according to its "Medical Underwriting Guidelines".

Aetna's letter to Plaintiff of May 11, 2010 also advised Plaintiff that she had a right to make an administrative appeal of its decision and, if the denial was upheld on administrative appeal, to file a civil action in federal court. Plaintiff was also advised that Aetna would consider "any other claim information or documentation you believe would assist us in reviewing your claim."

After receiving Aetna's letter, Plaintiff retained counsel who submitted additional medical records concerning Mr. Mraz. By letter dated March 24, 2011 (Doc. 9-5), Aetna advised Plaintiff's counsel that its Medical Underwriting Consultant had reviewed the additional medical information and had concluded that it corroborated Aetna's previous conclusion that Mr. Mraz had been treating for bipolar disorder as diagnosed by Dr. Matthew Burger, a

5

psychiatrist. Aetna's letter of March 24, 2011 reiterated its earlier position, to wit:

> As stated in our May 11, 2010 letter to Mrs. Mraz based on information supplied by General Dynamics, Mr. Mraz's date of hire was May 21, 2007. He did not elect Supplemental Life Insurance Coverage at that time. Records show he enrolled for Supplemental Life Insurance for the 2009 Plan year. He completed an Evidence of Insurability Statement as required for late applicants. He then died on September 13, 2009, which was within two years of his application approval date.

Aetna's letter (Doc. 9-5) then referenced the "Incontestability" section of the Plan which it interpreted to mean that, because Mr. Mraz died within two years of the time his supplemental coverage was placed "in force", the misstatement on his EOI rendered the coverage void. Upon Aetna's affirmation of its earlier denial of coverage, this lawsuit began.

### III. Applicable Legal Standards.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A disputed fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *Anderson v. Liberty*

Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d. 202 (1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor, Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir.2005). Nonetheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. Celotex Corp. V. Catrett, 477 U.S. 317, 322-23, (1986). This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex, supra, at 322; Wisnieweski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir.1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." Anderson, supra, at 249-50 (internal citation omitted).

A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See

7

*Lexington Ins. Co. V. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir.2005)(holding that speculation is not sufficient to defeat a motion for summary judgment). As we have said before, "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir.2006).

An additional standard to be applied in ERISA actions like the instant case requires the Court to uphold a Plan Administrator's benefits determination (such as the denial of coverage in the instant case) unless it determines that the Plan Administrator's decision was arbitrary and capricious or without reasonable basis. Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed. 2d. 80 (1989). Courts reviewing the decisions of ERISA Plan Administrators and civil enforcement actions pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest [e.g. when the same entity both funds and administers benefits] as one of several factors in considering whether the administrator or fiduciary breached its discretion. Estate of Schwing v. The Lilly Health Plan, 562 F3d. 522, 525 (3d. Cir. 2009).

## IV. Discussion.

### A. Plaintiff's Motion for Summary Judgment.

Plaintiff's Motion for Summary Judgment (Doc. 46) is predicated on two arguments outlined in its Brief in Support of Judgment on the Administrative Record (Doc. 52). These arguments will be discussed in turn.

#### 1. Propriety of Aetna's decision that Mr. Mraz was a late applicant required to submit an EOI.

Plaintiff argues that, because Aetna had the responsibility to pay benefits under the Plan and also was empowered thereunder to make coverage determinations, this Court should review Aetna's decision that Mr. Mraz was a late applicant who was required to submit an EOI in light of Aetna's "inherent structural conflict of interest when applying the arbitrary and capricious standard to Aetna's eligibility determination." (Doc. 52 at 7). Plaintiff's argument in this regard is generally consistent with Estate of Schwing, supra, and the Court will be mindful of Aetna's dual role when applying the abuse of discretion standard. The Court notes, however, that Aetna's "inherent structural conflict" in this case is attenuated by the fact that the Plan Sponsor (General Dynamics) structured claims administration through Aetna but provided for plan administration through a third party, Aon-Hewitt. See Doc. 60 at 11-12 and Doc. 61, ¶¶ 50-56. When this type of bifurcated administration exists, the significance of the conflict is

9

lessened. See Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105, 117-18 (2008). [4]

Plaintiff asks the Court to find that procedural irregularities and inconsistent documentation in the Administrative Record render Aetna's determination that Mr. Mraz was a late applicant, who was required to submit an EOI as a precursor to supplemental life insurance coverage, arbitrary and capricious. The Court cannot agree.

Plaintiff first points to the fact that a Proof of Death form (Doc. 9-2) completed by Aetna that indicated that $129,800.00 of supplemental life insurance coverage was "in force" at the time of Mr. Mraz's death is an inconsistency which should render Aetna's denial of such coverage arbitrary and capricious. Yet, while the coverage may have been " in force" at the time of Mr. Mraz's death, it was still subject to verification of the accuracy of Mr. Mraz's EOI as long as the coverage had not been in force for two years. The Plan's "Incontestability" provision states:

> The validity of this policy shall not be contested, except for non-payment of premiums, after it has

---

[4] Plaintiff also argues that Aetna's "inherent structural conflict" requires this Court to apply a more liberal "de novo" standard of review with respect to Aetna's factual determinations. Plaintiff's argument in this regard relies upon obsolete case law in conflict with Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105 (2008). Thus, there is no legal basis for a "de novo" standard of review here of Aetna's factual determinations. Moreover, as will be explained in greater detail below, Plaintiff has failed to produce any evidence that Aetna's decision was improperly biased under either an abuse of discretion standard or de novo standard of review.

>been in force for two years. No statements made by an employee about his insurability shall be used by Aetna in contesting the validity of the insurance as to which such statement was made if the insurance had been in force prior to the contest for two years during the employee's lifetime nor unless such statement is contained in a written form signed by him.

The clear implication of the above-quoted language is that Aetna was free to delve into the accuracy of Mr. Mraz's EOI so long as the insurance had not been in force for two years during his lifetime.

Aetna argues that its records indicate that Mr. Mraz did not seek supplemental life insurance coverage until late 2008 and that the coverage was not in force until January 1, 2009. Because Mr. Mraz died on September 13, 2009, Aetna contends that the coverage had been in force for less than the requisite two years prescribed by the "Incontestibility" provision of the Plan. Aetna buttresses this contention with the affidavit of Lynn Kenney (Doc. 49-2, ¶ 14) which states that Mr. Mraz submitted an EOI in conjunction with an application for supplemental life insurance benefits on December 11, 2008 for the 2009 plan year. Aetna also produced Mr. Mraz's Online EOI Submission of November 9, 2009 (Doc. 49-

11

1 at 42-44) as part of the Administrative Record.

To counter Aetna's submissions regarding the date Mr. Mraz first applied for supplemental insurance benefits, Plaintiff asks the Court to conclude that Mr. Mraz had actually applied for these benefits when he first went to work for General Dynamics in 2007. Plaintiff relies upon the aforementioned Proof of Death form and also upon Plaintiff's own Affidavit (Doc. 51, ¶¶ 3-5) in which she attests that her husband elected life insurance coverage during his initial enrollment in 2007. The Court must, therefore, consider the relative reliability of Aetna's business records - - which indicate that Mr. Mraz never applied for supplemental insurance benefits until late 2008 - - and Plaintiff's memory as recounted in her affidavit.

While the Court does not doubt the sincerity of Plaintiff's affidavit, it cannot conclude that it is more reliable than the computerized business records Aetna has provided. Plaintiff simply has no objective corroboration that her husband applied for the benefits she seeks during his first enrollment period. She has produced no copy of such an application within the relevant time period, no communication from Aetna or the employer confirming receipt of such an application, or even a cancelled check or other payment record to indicate that supplemental insurance benefits had been

purchased before January of 2009.

Plaintiff also argues that the EOI Mr. Mraz submitted on November 9, 2008 should be considered a nullity because it was recorded via electronic submission rather than executed in writing.  Plaintiff makes much of the fact that the Plan provides that Aetna may not use "any written statement of insurability (e.g. the EOI) in a contest unless the same is signed...". (Doc. 52 at 13).  Plaintiff cites no authority for the proposition that an electronic submission may not constitute a signature.  The Court must observe that we live in a time when all manner of commercial transactions are routinely cemented by electronic submission.  Beyond that, Aetna states, correctly, that both Congress and the Commonwealth of Pennsylvania have enacted statutes expressly affirming the validity of electronic records and signatures. See, respectively, 15 U.S.C. § 7001(a)(1) and (2) and 73 Pa. CSA 2260.303(a)(b).  Given the clear weight of authority, Plaintiff's argument regarding the manner in which Mr. Mraz submitted his EOI must fail.

Given the state of the Administrative Record, the Court cannot conclude that Aetna acted arbitrarily and capriciously when it concluded that Mr. Mraz never applied for supplemental insurance benefits until late 2008 for the 2009 Plan Year. Concomitantly, Aetna's insistence on a review of Mr. Mraz's

EOI was appropriate under the circumstances.

### 2. Aetna's conclusion that Mr. Mraz's EOI was materially inaccurate.

Plaintiff argues that the medical records that form part of the Administrative Record do not contain reliable evidence that Mr. Mraz was treating for bipolar disorder at the time he submitted the EOI in November of 2008 (Doc. 52 at 14-20). Plaintiff contends that these records indicate only that Mr. Mraz "suffered from everyday stress exacerbated by a change in work schedule" (Id. at 18) and insomnia (Id. at 19). Plaintiff also assails Aetna's conclusion that Mr. Mraz was treating for bipolar disorder by pointing out that the initial assessment of bipolar disorder was not made by Matthew Berger, M.D., but rather by a physician's assistant in Dr. Berger's employ.

Plaintiff's observations are correct but incomplete. Mr. Mraz's treatment records are replete with a recurrent assessment of "bipolar affective disorder unspecified" and "generalized anxiety disorder". See treatment records of Matthew Berger, M.D. (Doc. 29-9, pages 2-17). These records memorialize seven visits by Mr. Mraz to Dr. Berger's office between August 5, 2008 and June 8, 2009. On each of these occasions Mr. Mraz was assessed to be exhibiting symptoms of bipolar disorder and prescribed medications - - Lamictal and

Alprazolam - - commonly used for the treatment of bipolar disorder. Aff. Of Lynn Kenney (Doc. 49-2, ¶ 22). The Kenney Affidavit also establishes that, had Aetna known of Mr. Mraz's treatment history for bipolar disorder, coverage would have been declined under Aetna's Medical Underwriting Guidelines. (Id.).

Importantly, in light of Plaintiff's observation that a physician's assistant made the initial assessment on August 28, 2008, Dr. Berger noted in writing on each of the other six records: "Read above, agree with assessment and treatment." Two of these sessions, that of September 9, 2008 and that of October 10, 2008, occurred before Mr. Mraz executed his EOI of November 9, 2009. These records so clearly catalogue a treatment history for bipolar disorder that the Court must conclude that Mr. Mraz's EOI response indicating that he had not received treatment within the previous ten years for a mental or emotional condition was plainly inaccurate and an obvious misstatement.[5] Consequently, Plaintiff's argument that Aetna arbitrarily and capriciously concluded that Mr. Mraz treated for bipolar disorder in the ten year period immediately preceding submission of his EOI must be rejected.

Because the Court has considered and rejected Plaintiff's

---

[5] Plaintiff's brief (Doc. 52 at 19-20) notes that there is no evidence that Mr. Mraz knew he had been assessed with bipolar disorder. This is true and also irrelevant inasmuch as Aetna's denial of coverage was based, not upon fraudulent intent, but rather upon a misstatement of the "true facts".

15

arguments regarding both Aetna's procedural irregularities and Aetna's evidentiary basis for its denial of benefits, Plaintiff's Motion for Judgment on the Administrative Record must be denied.

B.   **Aetna's Motion for Judgment on the Administrative Record.**

In the course of the foregoing discussion rejecting each of Plaintiff's arguments in support of her Motion for Judgment on the Administrative Record, the Court has determined: (1) that procedural irregularities Plaintiff attributed to Aetna were mere clerical errors having no legal consequence; and (2) that Aetna's reliance on the medical evidence of record was logical and appropriate. The Court find that the Administrative Record provides an ample evidentiary basis for Aetna's denial of supplementary insurance benefits in this case. Aetna's Motion for Judgment on the Administrative Record (Doc. 47) will be granted because the Court also finds that no reasonable juror could conclude that Aetna's decision was arbitrary and capricious. An Order consistent with the analysis above will be filed contemporaneously herewith.

BY THE COURT

/s/ Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Dated   10-7-14